In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00367-CR
_____

KELVIN LEE ROY, Appellant

V.

THE STATE OF TEXAS, Appellee

**On Appeal from the 163rd District Court**
**Orange County, Texas**
**Trial Cause No. B-140,221-R**

## MEMORANDUM OPINION

A jury convicted Kelvin Lee Roy of murder and assessed a punishment of seventy-five years in prison. In two appellate issues, Roy challenges the sufficiency of the evidence and the denial of his request for a jury instruction on the lesser-included offense of manslaughter. We affirm the trial court's judgment.

### Background

Roy was charged with the death of Alexandria Bertrand, which resulted from a vehicle collision. According to Taralynn Brown, Roy's former girlfriend,

1

Roy was driving her vehicle on the night of the offense so that she could purchase food. During the drive, Roy passed his exit, repeated words to himself, and lit a dip cigarette.[1] Brown testified that Roy was driving in two lanes and almost struck the side of the freeway and other vehicles, but Roy refused to pull over. Roy told Brown, "I'm going to kill both of us."

Christopher Morgan, Joshua Bryan, and Brittany Monroe testified that they saw Roy drive past them at a high rate of speed. Morgan and Bryan testified that Roy overcorrected and nearly struck the curb. Bryan and Monroe heard the engine revving as it sped past them. Bryan testified that "it was like whoever the driver of the car was hit the gas, because you could see the rear end of the car actually sit down[.]" Morgan, Bryan, and Monroe testified that they never saw the vehicle's brake lights. Morgan believed Roy had "[n]o intent to stop." Monroe testified that it did not appear that Roy was attempting to avoid other vehicles.

Brown testified that Roy continued driving "crazy" and that she begged Roy to stop, but that Roy accelerated and Brown recalled "flying in the air and crashing." April Bertrand testified that she and her daughter, Alexandria, were in their vehicle, stopped at a red light, when Roy struck Bertrand's vehicle. Kevin Huebel testified that he was approaching the red light when Roy flew past him and

---

[1]Roy testified that a "dip cigarette" is a cigarette dipped in P.C.P.

2

collided with Bertrand's vehicle. Bertrand testified that Alexandria was ejected from the vehicle. Huebel compared the sound of the accident to an explosion or bomb. Officer Rodney Johnson described the scene as looking like a war zone or a bomb explosion.

Victoria Andis, who heard the crash and saw Roy's vehicle fly toward her and roll to a stop, testified that Brown was screaming and trying to climb out of the vehicle's window. Andis assisted Brown, who told Andis that Roy was driving crazy, was under the influence, and was trying to kill Brown and himself. Andis smelled alcohol in the vehicle and saw drugs around the vehicle. Monica Hall, a registered nurse who stopped to help, testified that Brown told her that Roy was "under the influence." Officer Chase Alexander testified that Brown told him she thought Roy was under the influence, but she did not mention Roy trying to kill her.

Hall and Alexander testified that Roy was unconscious in his vehicle. Johnson testified that he smelled an odor of alcohol around the vehicle and that Roy was non-responsive. Officer Jesus Loredo testified that Roy was in and out of consciousness, was lethargic, and had a "wild-eyed" appearance. He testified that Roy's symptoms could be indicative of either being intoxicated or having been in an accident. Loredo also smelled a strong odor of alcohol coming from the vehicle

3

and he collected baggies of marihuana and cocaine from the area around the vehicle. Roy denied ownership of the drugs.

Bertrand testified that, at the hospital, Alexandria was pronounced brain dead. Dr. John Ralston, a forensic pathologist, explained that Alexandria suffered from a fracture at the base of her skull, hypermobility, blood in her lungs, bleeding over her brain, a spinal cord injury, and skin lacerations. He testified that Alexandria died of blunt force trauma.

Sergeant Richard Howard testified that he saw no pre-impact skid marks at the scene, which indicated an absence of braking before impact. He testified that he has seen intoxicated people involved in an accident without ever having applied the brakes. Alexander testified that Roy's erratic driving was consistent with a person driving while intoxicated, but was also consistent with a person intending to cause an accident. According to Howard, Roy's vehicle became airborne before striking the back right side of Bertrand's vehicle. Given that the battery was thrown from Roy's vehicle and the vehicle landed quite a distance from the point of impact, Howard believed the vehicle was traveling at a high rate of speed.

Roy testified that on the night of the offense, he and Brown were driving to pay someone for repairing Brown's car. He testified that Brown brought two cups of alcohol and that they drank and used marihuana in the vehicle. Brown testified

4

that she had been drinking that day, but was not intoxicated and did not use marihuana in the vehicle. She believed that Roy was intoxicated when the offense occurred. Roy's blood tested positive for benzodiazepine, phencyclidine (P.C.P.), and T.H.C. and his blood alcohol level was well below the legal limit.

According to Roy, the repairman was not at home, so he lit a dip cigarette and headed home. When he began to feel dizzy, he told Brown to take the steering wheel and attempted to pull over, but he passed out. He attributed this to the combination of drugs, marihuana, dip cigarette, and alcohol. Roy could not recall speeding down the road or the accident itself. He testified that he did not intend to speed and was unaware of what was happening when the accident occurred.

Roy admitted having a history of drug use and drug-related criminal offenses, including a conviction for assault family violence against Brown. He testified that he smoked marihuana daily, used P.C.P. maybe twice per month, and consumed alcohol once or twice per month. He admitted knowing the risks of drinking and driving, as well as smoking marihuana and driving, but he still chose to drive. Roy denied getting into an argument with Brown, becoming enraged, or threatening Brown with injury or death. He testified that he acted recklessly, but had no intent to injure anyone, including Brown, and that he accepted responsibility for Alexandria's death.

5

Sufficiency of the Evidence

In issue one, Roy maintains that the evidence is insufficient to support his murder conviction. The "*Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We assess all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We give deference to the jury's responsibility to fairly resolve conflicting testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13.

The indictment alleged that Roy intended to cause serious bodily injury to Brown and intentionally committed an act clearly dangerous to human life, "to wit: driving a vehicle in which the said Taralynn Brown was a passenger into another vehicle causing the vehicles to collide which said act caused the death of Alexandria Bertrand[.]" *See* Tex. Penal Code Ann. § 19.02(b)(2) (West 2011). On

appeal, Roy maintains that the evidence is insufficient to prove murder because, according to Roy, he was intoxicated and lacked any intent to harm or kill Brown.

"Circumstantial evidence alone is sufficient to establish guilt[]" and intent may be inferred from circumstantial evidence such as the appellant's acts, words, and conduct. *Guevara v. State*, 152 S.W.3d 45, 49-50 (Tex. Crim. App. 2004). In this case, the jury heard testimony that Roy was driving erratically on the night of the offense. Brown testified that Roy expressly stated that he intended to kill both himself and Brown. Andis testified that Brown also told her that Roy intended to kill them both. Witnesses testified that Roy's vehicle accelerated and no brake lights were ever seen. The jury heard witnesses testify that Roy appeared to have no intent to either stop or avoid other vehicles. Sergeant Howard testified that the absence of pre-impact skid marks indicated that Roy's vehicle had not braked before impact. Howard believed that Roy's vehicle had been traveling at a high rate of speed. The jury heard evidence suggesting that the manner in which Roy was seen driving was consistent with a person driving with the intent to cause harm. Additionally, the record contains evidence demonstrating that Roy had intentionally harmed Brown in the past.

As sole judge of the witnesses' credibility and the weight of their testimony, the jury bore the burden of resolving any conflicts in the evidence. *See Jackson*,

443 U.S. at 318-19; *see also Hooper*, 214 S.W.3d at 13. In doing so, the jury was entitled to reject Roy's version of the events leading up to the offense and to accept Brown's testimony that Roy intended to kill her. Based on the evidence presented at trial, the jury could reasonably infer Roy's intent to cause serious bodily injury to Brown and intent to commit an act clearly dangerous to human life, thereby causing Alexandria's death. *See Guevara*, 152 S.W.3d at 49-50; *see also Palafox v. State*, 484 S.W.2d 739, 743 (Tex. Crim. App. 1972) (A vehicle is not a deadly weapon, *per se*, so that intent may be presumed, but intent may be shown from all the circumstances surrounding the killing.); *see also* Tex. Penal Code Ann. § 19.02(b)(2). Viewing all the evidence in the light most favorable to the State, the jury could reasonably conclude, beyond a reasonable doubt, that Roy committed the offense of murder. *See* Tex. Penal Code Ann. § 19.02(b)(2); *see also Jackson*, 443 U.S. at 318-19; *Hooper*, 214 S.W.3d at 13. We overrule issue one.

## Jury Charge

In issue two, Roy challenges the trial court's denial of his request for a jury instruction on the offense of manslaughter. He contends that the jury could have determined that he was the cause of Alexandria's death by his recklessness but not that he intended to harm Brown. The first step in our analysis is to determine whether the lesser-included offense is included within the proof necessary to

8

establish the charged offense. *Sweed v. State*, 351 S.W.3d 63, 67-68 (Tex. Crim. App. 2011). The Court of Criminal Appeals has held that manslaughter is a lesser-included offense of murder. *Cavazos v. State*, 382 S.W.3d 377, 383-84, 386 (Tex. Crim. App. 2012).

Accordingly, we proceed to the second part of the analysis, which is whether there is some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense. *Sweed*, 351 S.W.3d at 68. The record must contain some evidence that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *Id.* If evidence from any source raises a defensive issue or raises an issue that a lesser-included offense may have been committed, and an instruction is properly requested, the issue must be submitted to the jury. *Id.* at 69.

A person commits manslaughter if he recklessly causes a person's death. Tex. Penal Code Ann. § 19.04(a) (West 2011). A person acts recklessly "when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(c) (West 2011). According to Roy, he passed out from a combination of drug and alcohol use, was unaware of what was happening, had no control while in the vehicle, and could not remember anything after he passed out, including speeding down the highway and crashing

into Bertrand's vehicle. Based on Roy's own testimony, the record does not demonstrate that at the time of the offense, Roy was aware of, but consciously disregarded, a substantial and unjustifiable risk that Alexandria would die as a result of his conduct. *See id.*

"Evidence of a defendant's inability to remember causing the death of the victim does not entitle the defendant to a charge on the lesser-included offense of manslaughter[.]" *Schroeder v. State*, 123 S.W.3d 398, 401 (Tex. Crim. App. 2003). Because Roy's testimony establishes that he was unaware of the result of his conduct, the trial court properly denied Roy's request for an instruction on the lesser-included offense of manslaughter. *See id.*; *see also* Tex. Penal Code Ann. § 6.03(c). We overrule issue two and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on August 4, 2015
Opinion Delivered August 26, 2015
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.