**Affirmed as Modified and Memorandum Opinion filed June 29, 2021.**



In The

# Fourteenth Court of Appeals

NO. 14-20-00107-CR
NO. 14-20-00108-CR

**ANTOINE KIRKWOOD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 403rd District Court**
**Travis County, Texas**
**Trial Court Cause Nos. D-1-DC-18-301185; D-1-DC-18-900211**

## MEMORANDUM OPINION

A jury found appellant guilty of manslaughter and unlawful possession of a firearm. In two issues, appellant contends that the evidence is insufficient to support the manslaughter conviction and that the trial court erred by not severing the two charges. The State contends that the trial court's judgments contain clerical errors. We modify the judgments to correct the errors and affirm the judgments as modified.

# I.    SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends that the evidence is insufficient to prove him guilty of manslaughter because his actions were not a gross deviation from the standard of care an ordinary person would exercise.

## A.    Standard of Review and Legal Principles

When reviewing the sufficiency of the evidence, we consider all of the admitted evidence in the light most favorable to the verdict to determine whether a rational jury could find the essential elements of the offense beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). The jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Id.* Juries can draw any reasonable inference from the facts so long as each inference is supported by the evidence. *Id.*

A person commits manslaughter by recklessly causing the death of an individual. Tex. Penal Code § 19.04. The culpable mental state of recklessness applies to the result of the conduct, i.e., causing death. *Schroeder v. State*, 123 S.W.3d 398, 399 (Tex. Crim. App. 2003). A person acts recklessly with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. Tex. Penal Code § 6.03(c); *Schroeder*, 123 S.W.3d at 399. "The risk must be of such a degree that its disregard constitutes a gross deviation of the standard of care that an ordinary person would exercise under all the circumstances viewed from the actor's standpoint." Tex. Penal Code § 6.03(c).

"Proof of a culpable mental state generally relies upon circumstantial evidence." *Stadt v. State*, 120 S.W.3d 428, 438 (Tex. App.—Houston [14th Dist.] 2003), *aff'd*, 182 S.W.3d 360 (Tex. Crim. App. 2005). A jury may infer

recklessness from the acts, words, and conduct of the accused and the surrounding circumstances. *Id.*

## B.    Evidence

An employee at a bar testified that he saw appellant get into an argument with the decedent and one or two other men outside the bar. A security camera recording was admitted as an exhibit and shows the events directly leading up to the shooting. The employee testified that when appellant walked to his car, the decedent and his friend started cursing and saying words to appellant, which "got a rise out of" appellant. The video shows appellant reach around inside the door area of his car and then to his waist or pocket. He stayed by the car for about ten seconds.

The employee testified that appellant came back to the men and continued arguing with them. A "little scuffle" started, and the employee believed that a pistol fell from the back of appellant's pants. The pistol and clip separated and fell to the ground. The decedent picked up the clip and some bullets off the ground while appellant picked up the gun. The employee testified that appellant "ran back to his car, and at that point maybe he reloaded." The video shows that appellant stayed at his car for about five seconds.

According to the employee, the decedent continued to taunt appellant. Appellant walked from his car toward the decedent while holding the gun. The decedent punched appellant in the face, and appellant "looked a little dazed." Appellant came back towards the decedent and swung the gun at the decedent to "pistol whip" him. The gun hit the decedent's chest and went off. The decedent was shot in the head and died. Appellant got back in his car and drove away.

The court admitted into evidence a video recording of appellant's interrogation by police. During the interrogation, appellant admitted to shooting the decedent. He claimed that the pistol was not his and someone else had dropped it. He claimed to have left the pistol at the scene, although an officer testified that the gun was never recovered. Appellant acknowledged during the interrogation that the gun did not have a "lock" or safety on it. A police officer testified that appellant's stating there was no safety on the gun showed that appellant had at least some familiarity with the weapon. The officer also testified that people are taught in gun safety courses to assume that every gun is loaded and that they should not point a gun at anything they do not want to shoot.

Appellant testified similar to his prior statements that the gun dropped from someone else and was not his. He testified that he picked up the gun because he did not want someone else to get it and shoot him. He testified that he did not know the gun was loaded. He acknowledged that after the shooting, he told his girlfriend to report as stolen the car he had been driving. He shaved his head and beard so he would not resemble the person that the police had been looking for. He testified that he gave the gun to his girlfriend.

## C.    Analysis

Appellant contends that his disregard of the risk of death to the decedent was not a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances viewed from his standpoint. In particular, appellant notes that he was responding to a continuing physical threat, he was panicked and dazed, and he believed there wasn't a bullet in the gun when he used it to swing at the decedent.

The Court of Criminal Appeals has reasoned that "a reckless state of mind may be inferred or presumed from the act of pointing a gun at someone." *Guzman*

4

*v. State*, 188 S.W.3d 185, 193–94 (Tex. Crim. App. 2006) (noting that the defendant testified that he did not know the gun was loaded and he "thought it was unloaded because he had removed the clip," but it did "not matter that appellant may have also believed that the gun was unloaded"). "Courts have upheld jury findings that a defendant consciously disregarded a substantial and unjustifiable risk in numerous situations involving allegedly accidental discharge of a firearm." *Gahagan v. State*, 242 S.W.3d 80, 86 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (collecting cases); *see also Heredia v. State*, No. 03-19-00311-CR, 2020 WL 6789092, at *4 (Tex. App.—Austin Nov. 19, 2020, pet. filed) (mem. op., not designated for publication) (collecting cases for the proposition that a "jury may infer recklessness from evidence that a defendant was familiar with firearms and pointed a firearm in the victim's direction, even if the defendant claimed not to know that the firearm was loaded"). Evidence that a defendant was familiar with guns and took actions after the shooting to conceal evidence may support a reasonable inference that the defendant was conscious of the risk created by their actions. *See Gahagan*, 242 S.W.3d at 83–84, 88 (upholding manslaughter conviction when the defendant was familiar with guns although she testified that she had unloaded the gun before the accidental discharge; and after the shooting, she removed the casing from the gun and hid it, did not render aid to the decedent, lied to police that the decedent had held the gun, placed the gun in the decedent's hand, and washed her hands and face before paramedics arrived).

The jury heard evidence that appellant brought a gun to a fistfight. The jury could have credited the employee's testimony that the gun fell from appellant's pants, which was consistent with the video appearing to show that appellant retrieved something from his car. Regardless, appellant testified that he picked up the gun because he did not want someone else to shoot him with it, and he knew

5

there was no lock or safety on the gun. This evidence demonstrates appellant's familiarity with the gun and his awareness that his conduct risked causing death. *See Sadler v. State*, 728 S.W.2d 829, 831 (Tex. App.—Dallas 1987, no pet.) (upholding manslaughter conviction and reasoning that the defendant was aware of the risk of injury or death involved in a struggle over a gun because the defendant testified that he wanted to gain possession of the gun "because he was afraid that if the deceased reached the pistol first she would shoot him"). After picking up the gun, he retreated to his car where he stayed for at least five seconds. Rather than leave the scene or place the gun in the car, he engaged the decedent while holding the gun. After the decedent punched appellant, appellant swung the gun at the decedent and shot him in the head. The jury could have determined that appellant's conscious disregard of the risk of death associated with swinging a gun at the decedent was a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances viewed from his standpoint.

Moreover, appellant's conduct after the shooting—fleeing, changing his appearance, attempting to conceal evidence, and lying to police about what he did with the gun—demonstrates a consciousness of guilt. *See Gahagan*, 242 S.W.3d at 88 (upholding manslaughter conviction based on circumstantial evidence supporting a reasonable inference that the defendant was conscious of the risk created by her actions, "such as [the defendant]'s familiarity with guns and her actions immediately following the shooting"); *see also Hammock v. State*, PD-0636-19, 2021 WL 2009583, at *6 n.33 (Tex. Crim. App. May 19, 2021) (noting that circumstantial evidence of a consciousness of guilt includes flight after the offense, secretive actions, attempting to hide or conceal evidence, and giving false information to police); *Harmel v. State*, 597 S.W.3d 943, 955 (Tex. App.—Austin 2020, no pet.) ("And 'consciousness of guilt is perhaps one of the strongest kinds

of evidence of guilt.'" (quoting *Harris v. State*, 645 S.W.2d 447, 456 (Tex. Crim. App. 1983))).

Considering all of the evidence in the light most favorable to the jury's verdict, a rational jury could have found beyond a reasonable doubt that appellant recklessly caused the decedent's death. Appellant's first issue is overruled.

## II. SEVERANCE

In his second issue, appellant contends that the trial court erred by refusing to sever the two charges, and this error "prejudiced [him] as to the possession of the firearm case, because the self defense argument in the manslaughter case placed him at the scene of the alleged possession of firearm charge, which the State would otherwise not have been able to establish." Appellant contends further that his "decision to argue self defense deprived him of the right to allege a defense without damaging his chances of success at trial as to the felon in possession of handgun case."[1] The State concedes error but contends that appellant was not harmed.

A trial court's erroneous denial of a severance motion is reviewed for harm under the non-constitutional error analysis. *Werner v. State*, 412 S.W.3d 542, 547 (Tex. Crim. App. 2013). We must disregard the error unless it adversely affected appellant's substantial rights. *See id.*; *see also* Tex. R. App. P. 44.2(b). Generally, the harm involved in not severing charges is that (1) the jury may convict a "bad man" not because of the crime charged but because of his prior or subsequent misdeeds, and (2) the jury will infer that because the defendant committed other crimes, he probably committed the crime charged. *See Werner*, 412 S.W.3d at

---

[1] Appellant did not request, nor did the trial court give the jury, a self-defense instruction.

547. When there is a substantial overlap of evidence between the two charges, the failure to sever is most likely harmless. *Id.* at 548–49.

Appellant's argument regarding the unlawful possession case is unfounded because the jury heard ample evidence other than his testimony that placed appellant at the scene. He admitted in his video-recorded statement to police that he possessed the gun and shot the decedent. Other witnesses testified that appellant shot the decedent. Thus, evidence of his guilt on the unlawful possession case was overwhelming even without appellant's testimony. *See id.* at 551 (considering overwhelming evidence of guilt). Moreover, appellant was not harmed regarding the manslaughter case because the evidence regarding the unlawful possession case substantially overlapped. Evidence that appellant possessed a gun was essential to the manslaughter case. *See id.* at 548 (no harm when evidence was admissible in any event).

Appellant's second issue is overruled.

### III. MODIFICATION OF THE JUDGMENTS

The State filed a motion for judgments nunc pro tunc, asking this court to modify the trial court's judgments due to clerical errors. Appellant did not file a response.

The State contends that the judgment in Cause No. D-1-DC-18-301185 erroneously reflects that (1) appellant's manslaughter conviction was for a first degree felony when it was for a second degree felony, *see* Tex. Penal Code § 19.04(b); and (2) appellant pleaded "true" to enhancement allegations when he pleaded "not true." The State contends further that the judgment in Cause No. D-1-DC-18-900211 erroneously reflects that (1) appellant's unlawful possession of a firearm conviction was for a second degree felony when it was for a third degree

felony, *see* Tex. Penal Code § 46.04(e); and (2) appellant pleaded "true" to an enhancement allegation when he pleaded "not true."

A court of appeals has authority to reform an erroneous judgment when the court has the necessary information to do so. *See Carmona v. State*, 610 S.W.3d 611, 618–19 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Houston-Randle v. State*, 499 S.W.3d 912, 915–16 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *see also LaBranch v. State*, No. 03-12-00473-CR, 2014 WL 3411207, at *7 (Tex. App.—Austin July 11, 2014, no pet.) (mem. op., not designated for publication) (modifying judgment rather than issuing judgment nunc pro tunc to correct clerical error in trial court's judgment).

Having reviewed the record, we conclude that the judgments contain clerical errors capable of reformation by this court. The State's motion is granted. We modify the judgments to reflect that appellant pleaded "not true" to the enhancement allegations and that the manslaughter and unlawful possession of a firearm convictions are second degree and third degree felonies, respectively.

We affirm the judgments as modified.

/s/      Ken Wise
         Justice

Panel consists of Chief Justice Christopher and Justices Wise and Hassan.
Do Not Publish — Tex. R. App. P. 47.2(b).